**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| TAMMY JEARY, GABRIELLE MCGUIRE, and JENNIFER ROY, individually, and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>DICKEY'S BARBECUE RESTAURANTS INC. d/b/a Dickey's Barbecue Pit, and DICKEY'S CAPITAL GROUP INC.,<br><br>        Defendants. | CASE NO. ___3:21-cv-137_____<br><br><br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiffs Tammy Jeary, Gabrielle McGuire and Jennifer Roy (collectively, "Plaintiffs"), individually, and on behalf of all similarly situated persons, allege the following against Defendants DICKEY'S BARBECUE RESTAURANTS INC. d/b/a Dickey's Barbecue Pit, and DICKEY'S CAPITAL GROUP INC. (collectively "Dickey's"), based upon personal knowledge, and on information and belief.

### NATURE OF COMPLAINT

1.     Dickey's is the nation's largest barbecue chain, with over 500 locations in 44 states. Despite growing into one of the nation's foremost restaurant chains, and suffering a highly publicized ransomware attack in 2015, Dickey's failed to invest in adequate data security, allowing malevolent actors to compromise its customers' sensitive financial information.

2.     Between approximately July 2019 and August 2020, Dickey's experienced a massive data breach through which the personal and financial information of, at minimum, 3 million Dickey's customers was misappropriated (the "Breach"), including credit card and debit card

4825-8944-3288.1

numbers, card expiration dates, cardholder names, and associated bank IDs and account numbers ("Card Information").

3.     Dickey's misconduct—failing to take adequate and reasonable measures to ensure its data systems were protected, failing to take available steps to prevent and stop the breach from occurring, failing to disclose to its customers the material fact that it lacked adequate computer systems and security practices to safeguard their Card Information, and failing to timely detect and provide adequate notice of the Breach—has caused substantial harm and injuries to consumers across the United States.

4.     Indeed, Dickey's has yet to notify its customers of the Breach: Plaintiffs and similarly situated Dickey's customers learned of it only when third-party data security consultants discovered stolen financial data available for sale on the dark web and traced its origins to a then-undetected breach of Dickey's payment systems.

5.     Due to the Breach, the Card Information of at least 3 million Dickey's customers has been exposed to fraud, harming each and every individual whose payment information was compromised. The injuries suffered by Plaintiffs and the Class as a direct result of the Breach include, but are not limited to:

- unauthorized charges on their debit and credit card accounts;

- theft of their personal and financial information;

- costs associated with the detection and prevention of identity theft;

- unauthorized use of their financial accounts;

- loss of use of and access to their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts;

- costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate and deal with the actual and future consequences of the Breach, including finding fraudulent

charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection services, and the stress, nuisance and annoyance of dealing with all issues resulting from the Breach in the weeks leading up to and beyond the end-of-year holiday season;

- the imminent and impending injury flowing from potential fraud and identify theft posed by their credit card and personal information being placed in the hands of criminals and already misused after the sale of Plaintiffs' and Class members' information on the dark web;

- damages to and diminution in value of their personal and financial information entrusted to Dickey's for the sole purpose of purchasing products from it, and with the mutual understanding that Dickey's would safeguard customers' data against theft and not allow access and misuse of their data by others;

- money paid for products purchased at Dickey's during the period of the Breach in that Plaintiffs and the Class would not have eaten at Dickey's had it disclosed that it lacked adequate systems and procedures to reasonably safeguard customers' financial and personal information or provided timely and accurate notice of the Breach;

- overpayments paid to Dickey's for products purchased during the Breach in that a portion of the price for such products paid by Plaintiffs and the Class to Dickey's was for the costs of Dickey's providing reasonable and adequate safeguards and security measures to protect customers' financial and personal data, which Dickey's did not do, and as a result, Plaintiffs and members of the Class did not receive what they paid for and were overcharged by Dickey's; and

- continued risk to their financial and personal information, which remains in the possession of Dickey's and which is subject to further breaches so long as Dickey's fails to undertake appropriate and adequate measures to protect Plaintiffs' and Class members' data in its possession.

6.    As a result of Dickey's negligent, reckless, intentional, or unconscionable failure to adequately satisfy its contractual, statutory, and common-law obligations, Plaintiffs' Card Information was accessed, acquired, stolen, and re-sold by thieves for the express purpose of misusing Plaintiffs' data and causing further irreparable harm to Plaintiffs' personal, financial, reputational, and future well-being. After Dickey's central payment processing server was compromised and Plaintiffs' Card Information stolen, it was distributed to and among hacker

forums and other identity and financial thieves for the purpose of illegally misusing, reselling, and stealing sensitive financial data. Plaintiffs have been damaged as a result.

7.    Accordingly, Plaintiffs bring this action against Dickey's for its failure to reasonably safeguard Plaintiffs' Card Information, failure to reasonably provide timely notification that Plaintiffs' Card Information had been accessed and acquired by an unauthorized third party, and for intentionally and unconscionably deceiving Plaintiffs relating to the status, safety, location, access, and protection of Plaintiffs' Card Information.

8.    Accordingly, Plaintiffs bring this lawsuit against Dickey's for statutory violations as well as for negligence, negligent misrepresentation, fraud and fraud through silence, negligence per se, unjust enrichment, intrusion upon seclusion, and declaratory judgment.

## PARTIES

### Plaintiff Tammy Jeary

9.    Plaintiff Jeary is a citizen and resident of Texas. Between July 2019 and August 2020, Plaintiff Jeary entrusted Card Information to Dickey's on at least several occasions, with the reasonable expectation and understanding that Dickey's would protect and safeguard that information from compromise, disclosure, and misuse by unauthorized users and would be timely and forthright relating to any data security incidents involving Plaintiff Jeary's Card Information.

10.    Like all other members of the Class, Plaintiff Jeary used her credit card to purchase food from Dickey's for herself and her family.

11.    Plaintiff Jeary did not learn of the Breach until she was alerted to reporting published in October 2020 that advised Dickey's central payment processing server had been compromised and her Card Information misappropriated—months after the Breach occurred.

12.     In mid-2020, Plaintiff Jeary experienced several instances of unauthorized attempts to make purchases with the same credit card that she used to make purchases from Dickey's, and several instances of attempted identity theft, including attempts to obtain loans in her name.

13.     The Breach already has required Plaintiff Jeary to expend significant time and energy to protect herself from its potential adverse consequences, including but not limited to contacting her bank regarding the fraudulent charges, obtaining new cards, investigating whether hackers have further attempted to misuse her Card Information, and potential means by which to protect herself from identity theft, such as freezing her credit reports and obtaining monitoring for her associated bank and credit accounts.

14.     As a direct and proximate result of the Breach, and Dickey's failure to prevent against and timely notify Plaintiff Jeary of the same, Plaintiff Jeary has suffered concrete injuries. Plaintiff Jeary's damages also include the heightened risk of fraud and identity theft to which the Breach exposed her.

15.     Plaintiff Jeary would not have eaten at Dickey's or entrusted it with her Card Information had Dickey's disclosed that it lacked computer systems and data security practices sufficient to adequately safeguard her and other consumers' Card Information. Plaintiff Jeary has refrained from patronizing Dickey's since she became aware of the data breach.

**Plaintiff Gabrielle McGuire**

16.     Plaintiff McGuire is a citizen and resident of Ohio. Between July 2019 and August 2020, Plaintiff McGuire entrusted Card Information to Dickey's on at least several occasions, with the reasonable expectation and understanding that Dickey's would protect and safeguard that information from compromise, disclosure, and misuse by unauthorized users and would be timely

and forthright relating to any data security incidents involving Plaintiff McGuire's Card Information.

17.    Like all other members of the Class, Plaintiff McGuire used her debit card to purchase food from Dickey's for herself and her family.

18.    Plaintiff McGuire did not learn of the Breach until she was alerted to reporting published in October 2020 that advised Dickey's central payment processing server had been compromised and her Card Information misappropriated—months after the Breach occurred.

19.    In mid-2020, Plaintiff McGuire experienced several fraudulent transactions on the same debit card that she used to make purchases from Dickey's.

20.    The Breach already has required Plaintiff McGuire to expend significant time and energy to protect herself from its potential adverse consequences, including but not limited to contacting her bank to contest the fraudulent charges, obtaining new cards, investigating whether hackers have further attempted to misuse her Card Information, and potential means by which to protect herself from identity theft, such as obtaining monitoring for her associated bank and credit accounts.

21.    As a direct and proximate result of the Breach, and Dickey's failure to prevent and timely notify Plaintiff McGuire of the same, Plaintiff McGuire has suffered concrete injuries. Plaintiff McGuire's damages also include the heightened risk of fraud and identity theft to which the Breach exposed her.

22.    Plaintiff McGuire would not have eaten at Dickey's or entrusted it with her Card Information had Dickey's disclosed that it lacked computer systems and data security practices sufficient to adequately safeguard her and other consumers' Card Information. Plaintiff McGuire has refrained from patronizing Dickey's since she became aware of the data breach.

**Plaintiff Jennifer Roy**

23.     Plaintiff Roy is a citizen and resident of Louisiana. Between July 2019 and August 2020, Plaintiff Roy entrusted Card Information to Dickey's on at least several occasions, with the reasonable expectation and understanding that Dickey's would protect and safeguard that information from compromise, disclosure, and misuse by unauthorized users and would be timely and forthright relating to any data security incidents involving Plaintiff Roy's Card Information.

24.     Like all other members of the Class, Plaintiff Roy used her credit card to purchase food from Dickey's for herself and her family.

25.     Plaintiff Roy did not learn of the Breach until she was alerted to reporting published in October 2020 that advised Dickey's central payment processing server had been compromised and her Card Information misappropriated—months after the Breach occurred.

26.     In mid-2020, Plaintiff Roy experienced several instances of unauthorized purchases with the same credit card that she used to make purchases from Dickey's.

27.     The Breach already has required Plaintiff Roy to expend significant time and energy to protect herself from its potential adverse consequences, including but not limited to contacting her bank regarding the fraudulent charges, obtaining new cards, investigating whether hackers have further attempted to misuse her Card Information, and potential means by which to protect herself from identity theft.

28.     As a direct and proximate result of the Breach, and Dickey's failure to prevent against and timely notify Plaintiff Roy of the same, Plaintiff Roy has suffered concrete injuries. Plaintiff Roy's damages also include the heightened risk of fraud and identity theft to which the Breach exposed her.

29.     Plaintiff Roy would not have eaten at Dickey's or entrusted it with her Card Information had Dickey's disclosed that it lacked computer systems and data security practices sufficient to adequately safeguard her and other consumers' Card Information. Plaintiff Roy has refrained from patronizing Dickey's since she became aware of the data breach.

**Defendants**

30.     Defendant Dickey's Barbecue Restaurants, Inc. is a Texas corporation headquartered at 4514 Cole Avenue, Suite 1015, Dallas, Texas 75205. Dickey's Barbeque Restaurants, Inc. owns and/or operates the corporate and franchised Dickey's Barbecue Pit chain of restaurants.

31.     Defendant Dickey's Capital Group, Inc. is a Delaware corporation headquartered at 18583 N. Dallas Parkway, Suite 120, Dallas, Texas 75287. Dickey's Capital Group, Inc. is the parent of Defendant Dickey's Barbecue Restaurants, Inc.

## JURISDICTION AND VENUE

32.     This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in controversy exceeds the sum of $5,000,000, the number of class members exceeds 100, and Dickey's is a citizen of a State different from that of at least one Class member. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

33.     This Court has personal jurisdiction over Dickey's because they are authorized to and regularly conduct business in Texas, and are headquartered in Dallas, Texas.

34.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Texas.

## GENERAL ALLEGATIONS

### I.    *Dickey's Barbecue Pit – Background.*

35.    The Dickey's Barbecue Pit chain of restaurants was founded in 1941. Although it began as a single storefront in Dallas, Texas, it experienced tremendous growth over the ensuing decades. Dickey's began franchising in 1994, and, through Defendant Dickey's Barbecue Restaurants, Inc., is the owner/operator or franchisor of over 500 Dickey's restaurants located in forty-four (44) states and the United Arab Emirates, and employs over one thousand people. Analysts estimate that, in 2019, Dickey's generated over $300 million in sales across its locations.

36.    Due to modern payment trends, however, Dickey's sales growth has caused it to process an ever-growing number of credit and debit transactions, making it an attractive target for data thieves.

37.    Indeed, Dickey's is no stranger to data breaches. In 2015, Dickey's experienced a ransomware attack after an employee downloaded a virus that allowed hackers to hold Dickey's marketing files hostage. The culprits demanded $6,000 to release the files, but Dickey's declined. Dickey's did claim, however, that it upgraded its information security systems following the attack, including by implementing automated systems that create redundancy in its cybersecurity checks and scans.[1] Unfortunately, Dickey's efforts appear to have been for naught.

38.    On October 12, 2020, Joker's Stash, a popular online marketplace for fraudulently acquired data, began selling card data from a breach referred to as "BlazingSun." The sellers claimed the first tranche of data, "Lightquantum-01," (which strongly implies that additional data was stolen and has yet to be revealed), consists of more than three million Credit Information records associated with US-based transactions.

---

[1]    https://www.dickeys.com/press/in-the-news/dceo-guardians-of-the-network (last visited on Jan. 20, 2021).

4825-8944-3288.1



39.     The Credit Information included in Lightquantum-01 consists both of what are commonly referred to as Track 1 data (the credit card's critical financial details, such as the bank ID and account number, plus the holder's full name) and Track 2 data (all of the foregoing minus the holder's name). The disclosure of Track 1 information is particularly problematic for affected consumers: because it pairs the holder's name with account information, thieves are more likely to use Card Information to steal the card holder's identity and open fraudulent accounts in their name.

40.     The seller also advertised the Lightquantum-01 tranche as being "HIGH VALID 90-100%," meaning that 90-100% of the referenced cards still were valid and active, strongly implying the breached entity was as of then unaware of the breach.

41.     Fortunately for consumers, third party security consultants immediately began to investigate the source of the breach in response to requests from card issuers who observed fraudulent activity associated with Card Information included in the Joker's Stash tranche. Two such security consultants—Q6 Cyber and Gemini Advisory—analyzed the compromised Card Information and concluded the hackers likely misappropriated Plaintiffs' and Class members' Card Information from one of Dickey's central payment processing servers.[2] Gemini further reported that the stolen Card Information was associated with transactions at 156 Dickey's locations across 30 states between July 2019 and August 2020.

42.     Security analysts immediately traced the hack to Dickey's lax data security practices. Gemini noted that "sources have also determined that the payment transactions were processed via the outdated magstripe method,"[3] *i.e.*, where a payment is processed by swiping the magnetic strip on the back of a card rather than inserting an EMV card, a chip-based payment card with enhanced safety features designed to prevent fraudulent practices such as card skimming and cloning.

43.     The magstripe method is much more prone to malware attacks, which led Visa and Mastercard to require retailers beginning in 2005 to implement EMV chip systems or face full responsibility for the losses associated with credit card data breaches. That Dickey's processed Plaintiffs' and the Class' payment cards using the magstripe method suggests its storefronts used outdated terminals or misconfigured their EMV terminals. In either event, Gemini's analysis confirms Dickey's knew, or should have known, its payment data security systems are woefully inadequate and outdated.

---

[2] https://krebsonsecurity.com/2020/10/breach-at-dickeys-bbq-smokes-3m-cards/ (last visited on Jan. 20, 2021).
[3] https://geminiadvisory.io/jokers-stash-breaches-dickeys/ (last visited on Jan. 20, 2021).

4825-8944-3288.1

44.     Analysts also concluded that "given the widespread [geographic] nature of the [B]reach, the exposure may be linked to a breach of the single central processor, which was leveraged by over a quarter of all Dickey's locations."[4] If so, hackers likely compromised Card Information beyond the records contained in the Lightquantum-01 tranche, and will continue to release Class members' Card Information in the weeks and months ahead. The true scope of the Breach may not be known for many months.

45.     To date, there is no evidence that CVV2 codes—the three digit security codes printed on the signature stripe on back of credit and debit cards—were stolen. However, thieves can still engage in fraudulent transactions without access to those numbers:

> [T]hree- or four-digit security codes weren't stolen, but that doesn't necessarily matter for the hackers, per [data security expert Matthew] Wilson. A three-digit code has only 999 possible answers, after all. "That sounds like lot to human," he says. "To a machine, it's nothing."[5]

46.     Dickey's finally acknowledged the breach in an October 15, 2020 press release[6]:

> We received a report indicating that a payment card security incident may have occurred. We are taking this incident very seriously and immediately initiated our response protocol and an investigation is underway. We are currently focused on determining the locations affected and time frames involved. We are utilizing the experience of third parties who have helped other restaurants address similar issues and also working with the FBI and payment card networks. We understand that payment card network rules generally provide that individuals who timely report unauthorized charges to the bank that issued their card are not responsible for those charges.

Nevertheless, as of the filing of this Complaint Dickey's has made no effort to contact Plaintiffs and other affected Class members to notify them of the Breach as required by law.

---

[4] *Id.*
[5] https://www.phillymag.com/news/2019/12/20/wawa-data-breach/ (last visited on Jan. 20, 2021).
[6] https://krebsonsecurity.com/2020/10/breach-at-dickeys-bbq-smokes-3m-cards/ (last visited on Jan. 20, 2021).

47.    Dickey's failure to properly safeguard Class members' Card Information allowed cybercriminals to access their credit and debit Card Information undetected for more than a year. The length of the Breach demonstrates that Dickey's also had faulty network monitoring procedures in place. Had Dickey's properly monitored its card payment systems, it would have discovered the malware and siphoning of massive amounts of data much sooner than nine months after the breach began.

## II.    *Data Breaches Pose Significant Threats to Consumers*

48.    Data breaches have become a constant threat that, without adequate safeguards, can expose consumer data to malicious actors.

49.    In 2018, the Identity Theft Resource Center and CyberScout Annual End-of-Year Data Breach Report revealed a 126% increase in exposed consumer data.[7]

50.    In fact, Statista, a German entity that collects and markets data relating to, among other things, data breach incidents and the consequences thereof, estimates that the annual number of data breaches occurring in the United States increased by approximately 692% between 2005 and 2018, a year during which over 446.5 million consumer records were exposed due to data breach incidents.[8] Conditions have only worsened since: Statista estimates that "[i]n 2019, the number of data breaches in the United States amounted to 1,473 with over 164.68 million sensitive records exposed[,]" and that "[i]n the first half of 2020, there were 540 reported data breaches."[9]

51.    Securing consumers' Card Information is particularly important in light of the dozens of high-profile payment system data breaches that have been reported in recent years, which a sophisticated merchant like Dickey's—one that fell victim to a ransomware attack only a few

---

[7] Identity Theft Resource Center, End of Year Data Breach Report (2018).
[8]    https://www.statista.com/statistics/273550/data-breaches-recorded-in-the-unitedstates-by-number-of-breaches-and-records-exposed (last visited on Jan. 20, 2021).
[9] *Id.*

years prior to the Breach—knew or should have known about, including breaches of point-of-sale systems at: Arby's, Chipotle, Dairy Queen, Forever 21, GameStop, Harbor Freight Tools, Home Depot, Hy-Vee, Kmart, Lord & Taylor, Michael's Stores, Neiman Marcus, Noodles & Co., P.F. Chang's, Saks Fifth Avenue, Sally Beauty Supply, Schnuck Markets, Sonic Drive-In, SuperValu, Target, T.J. Maxx, Wendy's, and many others.

52.     In addition, the Federal Trade Commission ("FTC") has brought dozens of cases against companies that have "engaged in unfair or deceptive practices involving inadequate protection of consumers' personal data," including recent cases against Uber Technologies, Venmo, and VTech Electronics. The FTC publicized these enforcement actions to place companies like Dickey's on notice of their obligation to safeguard customer information.

## III.    Dickey's Security Practices Are Woefully Inadequate

53.     Dickey's purports to care about data security and safeguarding its customers' data. In its Privacy Policy, which is posted on its website,[10] Dickey's states that:

> [W]e understand that our customers are concerned about the use of their personal information, and we respect our customers' privacy. This Privacy Policy explains the steps we have taken to ensure that the personal information you submit to us is secure and kept confidential.
>
> *     *     *
>
> Dickey's is committed to preventing the unauthorized access to your personal information provided to us via our website, and we maintain procedures and technology designed for this purpose. Dickey's takes the following steps to protect the information that you provide us: (1) we update and test our technology on a regular basis in order to improve the protection of customer information; and (2) we require outside customers and independent contractors to whom we provide customer information for marketing and servicing or processing purposes to restrict the use of your information to those purposes and we prohibit independent use of such information.

---

[10] https://cms-www-dickeys-com.s3.amazonaws.com/privacy_policy_4cb941a12c.pdf  (last visited on Jan. 20, 2021).

54.     Dickey's further claims that "[c]ard information" entered on its website "is transmitted over secure SSL encryption and is not stored." However, Secure Socket Layer ("SSL") encryption protects information only in the course of its transmission, and not once it is stored, and "is not sufficiently secure."[11] Dickey's has disclosed no further details about its efforts to secure customer data prior to the Breach beyond claiming it revamped its security practices following the 2015 ransomware attack.

55.     Plaintiffs and the Class thus entrusted their Card Information to Dickey's in reliance on its self-imposed obligations to keep the Card Information confidential, and promise to secure it from unauthorized access by malevolent actors. It failed to do so, in violation of its own privacy policies, due in no small part to its failure to properly secure its payment systems and associated networks and servers.

56.     Specifically, Dickey's failed to ensure proprietary storefronts and its franchisees upgraded their payment processing equipment as required by the electronic payment industry and standard-setting bodies such as NIST. Specifically, and despite admonitions from Visa and Mastercard to upgrade point-of-sale payment systems, Dickey's failed to replace magstripe payment terminals with new EMV payment processing technologies.

57.     Although by 2015 most new credit and debit cards incorporated EMV chip technology, Dickey's continued to process payments by swiping cards rather than inserting EMV chips. Their failure to upgrade to more secure payment processing technology likely made them an attractive target for hackers. Indeed, in July 2020 NYU researchers studied data procured from BriansClub, a website that traffics in stolen credit and debit card data, and concluded that 97% of

---

[11]  *See* Internet Engineering Task Force, *Deprecating Secure Sockets Layer Version 3.0*, https://tools.ietf.org/pdf/rfc7568.pdf (last visited January 20, 2021).

the records available for purchase thereon consisted of stolen magnetic stripe data, which is more easily converted into counterfeit cards.[12]

58.    That is because magnetic stripes contain all the financial information necessary to make a purchase—the Track 1 and 2 data—and can be encoded into a magnetic stripe and used in a counterfeit card. EMV technology, conversely, encrypts and stores payment data in a chip that is embedded in the card and difficult to replicate. In other words, hackers target magstripe data—like that Dickey's allowed to be stolen—because it is easier to deploy in counterfeit cards through which they monetize stolen data.

59.    Despite the shortcomings inherent in magstripe technology, warnings from Visa and Mastercard concerning the same, and losses suffered during a 2015 ransomware attack, Dickey's failed to upgrade, and/or require franchisees to upgrade, their payment systems, resulting in the Breach. As Saryu Nayyar, CEO of Gurucal, explained to CPO magazine: "The credit card dump of Dickey's BBQ customers' cards highlights a number of issues. The first is a lack of consistency and enforcement in POS terminal operations. The fact that we are still seeing mag-stripe based data, when chipped cards have been ubiquitous for years, indicates that many retailers have not taken card security seriously."[13] Dickey's is one such retailer.

60.    The length of the Breach also demonstrates that Dickey's failed to safeguard Card Information by, *inter alia*: maintaining an adequate data security environment to reduce the risk of a data breach; periodically audit its security systems to discover intrusions such as malware and viruses like that deployed in the Breach; and retaining outside vendors to periodically test its payment card processing systems. Mr. Nayyar was troubled by the "fact that this breach was

---

[12] https://krebsonsecurity.com/2020/07/heres-why-credit-card-fraud-is-still-a-thing/ (last visited January 20, 2021).
[13] https://www.cpomagazine.com/cyber-security/three-million-credit-cards-harvested-and-sold-on-jokers-stash-dickeys-bbq-hack-undetected-for-over-a-year/ (last visited on Jan. 20, 2021).

ongoing for more than a year[,]" which indicates that Dickey's failed not only to "deploy the latest POS equipment, even at small franchise locations," but also to "have an up to date security stack, including behavioral analytics, that can detect a breach long before three million customer credit card numbers wind up for sale on the dark web."[14] As Mr. Nayyar concluded: "This [breach] was most likely entirely preventable."

61.     Comforte AG, a data security specialist, agreed: "organizations need to ensure that every step in the payment cycle is secured from acquisition to settlement. For merchants in the store, this means requiring the use of secure connections from the payment entry device to the backend using point-to-point encryption and tokenization to remove cardholder data from these vulnerable systems. For backend payment processors and the merchants that outsource to them, this means without exception tokenizing all data, both payment and personal, to ensure that any breach or leak of data will not result in exposure."[15]

62.     Most troubling of all, Dickey's has yet to inform Plaintiffs and the Class that their Card Information was compromised in the Breach, an act that "rob[s] [customers] of the chance to evaluate their exposure" by not informing them of a breach when it occurs.[16]

## IV.     Dickey's Failed to Comply with Federal Requirements

63.     The Federal Trade Commission ("FTC") has issued numerous guides for businesses highlighting the importance of reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.[17]

---

[14] *Id.*
[15] *Id.*
[16] https://techcrunch.com/2019/08/03/stockx-hacked-millions-records (last visited January 20, 2021).
[17] Federal Trade Commission, *Start With Security*, available a
   https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf.

64.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established guidelines for fundamental data security principles and practices for business.[18] The guidelines note businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct security problems.[19] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[20]

65.     Here, at all relevant times, Dickey's was fully aware of its obligation to protect the Card Information of customers, including Plaintiffs and the Class, because it is a sophisticated business entity whose investors are among the most technologically savvy persons and entities in the world.

66.     Dickey's was also aware of the significant consequences of its failure to do so because it collected Card Information from millions of consumers annually, and knew that this data, if hacked, would injure consumers, including Plaintiffs and Class members.

67.     Dickey's failure to follow the FTC guidelines, and their subsequent failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 14 U.S.C. § 45.

---

[18] Federal Trade Commission, *Protecting Personal Information: A Guide for Business*, available at https://www.ftc.gov/tips-advice/business-center/guidance/protecting-personal-information-guide-business.
[19] *Id.*
[20] *Id.*

4825-8944-3288.1

## V.     Plaintiffs and Class Members have Suffered Harm

68.     Like any data hack, the instant Breach presents major problems for all affected. Said Jonathan Bowers, a fraud and data specialist at fraud prevention provider Trustev, "Give a fraudster your comprehensive personal information, they can steal your identity and take out lines of credit that destroy your finances for years to come."[21]

69.     The FTC warns the public to pay particular attention to how they keep personally identifying information, including financial information and other sensitive data. As the FTC notes, "[t]hat's what thieves use most often to commit fraud or identity theft." And once they have this information, "they can drain your bank account, run up your credit cards, open new utility accounts, or get medical treatment on your health insurance."[22]

70.     The ramifications of Dickey's failure to properly secure Plaintiffs' and Class members' Card Information are severe. Identity theft occurs when someone uses another person's medical, financial, and personal information, such as that person's name, address, Social Security Number, medical and insurance information, financial account information, and other information, without permission to commit fraud or other crimes.

71.     According to data security experts, one out of four data breach notification recipients became a victim of identity fraud.

72.     Here, due to the Breach, Plaintiffs and Class members have been exposed to injuries that include, but are not limited to:

a.     Theft of Card Information;

---

[21] http://www.cnet.com/news/data-breach-snags-data-from-15m-t-mobile-customers/(last visited on Jan. 20, 2021).
[22] https://www.consumer.ftc.gov/articles/0271-warning-signs-identity-theft (last visited on Jan. 20, 2021).

4825-8944-3288.1

b.  Costs associated with the detection and prevention of identity theft and unauthorized use of financial accounts as a direct and proximate result of the Card Information stolen during the Breach;

c.  Damages arising from the inability to use accounts that may have been compromised during the Breach;

d.  Costs associated with spending time to address and mitigate the actual and future consequences of the Breach, such as finding fraudulent charges, cancelling and reissuing payment cards, purchasing credit monitoring and identity theft protection services, imposition of withdrawal and purchase limits on compromised accounts, including but not limited to lost productivity and opportunities, time taken from the enjoyment of one's life, and the inconvenience, nuisance, and annoyance of dealing with all issues resulting from the Breach, *if* they were fortunate enough to learn of the Breach despite Dickey's failure to disseminate notice in accordance with state law;

e.  The imminent and impending injury resulting from potential fraud and identity theft posed because their Card Information is exposed for theft and sale on the dark web; and

f.  The loss of Plaintiffs' and Class members' privacy.

73.    Plaintiffs and Class members have suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft, and misuse resulting from their Card Information winding up in the hands of criminals.

74.    As a direct and proximate result of Dickey's actions and omissions in disclosing and failing to protect Plaintiffs' and Class members' private personal information, Plaintiffs and those similarly situated have been placed at a substantial risk of harm in the form of identity theft, and have incurred and will incur actual damages in an attempt to prevent identity theft. Indeed, had Dickey's disclosed that it had failed to implement technological safeguards sufficient to protect their Card Information, Plaintiffs and the Class members would not have patronized Dickey's, nor would they have done so had they known Dickey's would fail to notify them of the Breach long after Dickey's learned of it.

75.    Plaintiffs and Class members retain an interest in ensuring there are no future breaches in addition to seeking a remedy for the harms suffered as a result of the Breach for themselves and on behalf of similarly situated consumers whose Card Information was stolen.

## CLASS ACTION ALLEGATIONS

76.    Plaintiffs bring this action on behalf of themselves and, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), a Class of:

> All persons in the United States who patronized, and used a credit card or debit card at, Dickey's Barbecue Pit between July 2019 and August 2020.

Excluded from the Class are Defendants, their executives, officers, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change or expand the Class definition after conducting discovery.

77.    In the alternative, Plaintiff Jeary brings this action on behalf of herself and, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), a subclass of:

> All Texas residents who patronized, and used a credit card or debit card at, Dickey's Barbecue Pit between July 2019 and August 2020 (the "Texas Subclass").

Excluded from the Texas Subclass are Defendants, their executives, officers, and the Judge(s) assigned to this case.

78.    In the alternative, Plaintiff McGuire brings this action on behalf of herself and, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), a subclass of:

> All Ohio residents who patronized, and used a credit card or debit card at, Dickey's Barbecue Pit between July 2019 and August 2020 (the "Ohio Subclass").

Excluded from the Ohio Subclass are Defendants, their executives, officers, and the Judge(s) assigned to this case.

79.    In the alternative, Plaintiff Roy brings this action on behalf of herself and, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and 23(b)(3), a subclass of:

All Louisiana residents who patronized, and used a credit card or debit card at, Dickey's Barbecue Pit between July 2019 and August 2020 (the "Louisiana Subclass").

Excluded from the Louisiana Subclass are Defendants, their executives, officers, and the Judge(s) assigned to this case.

80.     The Texas, Ohio and Louisiana Subclasses are collectively referred to herein as the "State Classes."

81.     <u>Numerosity</u>: The Class is so numerous that joinder of all members is impracticable. Dickey's has acknowledged that the Breach compromised the Card Information of at least 3 million consumers.

82.     <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a.     Whether Defendants' data security and retention policies were unreasonable;

b.     Whether Defendants failed to protect the confidential and highly sensitive information with which they were entrusted;

c.     Whether Defendants breached any legal duties in connection with the Breach;

d.     Whether Defendants' conduct was intentional, reckless, willful or negligent;

e.     Whether Defendants were negligent;

f.     Whether Defendants were unjustly enriched;

g.     Whether Plaintiffs and Defendants entered into a bailment arrangement, which was breached; and

h.     Whether Plaintiffs and Class Members are entitled to monetary damages, injunctive relief and/or other remedies and, if so, the nature of any such relief.

83.     <u>Typicality</u>: All of Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and all members of the Class had their Card Information compromised in the Breach.

-22-

84.    <u>Adequacy</u>: Plaintiffs are adequate representatives because their interests do not materially or irreconcilably conflict with the interests of the Class she seeks to represent, have retained counsel competent and highly experienced in complex class action litigation, and intend to prosecute this action vigorously. Plaintiffs and their counsel will fairly and adequately protect the interests of the Class.

85.    <u>Superiority</u>: A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and members of the Class. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually to effectively redress the wrongs done to them. Even if the members of the Class could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified based on, *inter alia*, Defendants' records and databases.

86.    Defendants have acted, and refused to act, on grounds generally applicable to the Class, thereby making appropriate final relief with respect to the Class as a whole.

**<u>CAUSES OF ACTION AND CLAIMS FOR RELIEF</u>**
**<u>COUNT I — Negligence</u>**
**(By all Plaintiffs on behalf of the Class or, alternatively, the State Classes)**

87.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

88.    This count is brought on behalf of all Class members.

-23-

89.     Dickey's owed a duty to Plaintiffs and the Class to use and exercise reasonable and due care in obtaining, retaining, and securing their Card Information that Dickey's collected.

90.     Dickey's owed a duty to Plaintiffs and the Class to provide security, consistent with industry standards and requirements, to ensure that its computer systems and networks, and the personnel responsible for them, adequately protected the Card Information that Dickey's collected.

91.     Dickey's owed a duty to Plaintiffs and the Class to implement processes to quickly detect a data breach, to timely act on warnings about data breaches, and to inform the Class of a data breach as soon as possible after it is discovered.

92.     Dickey's owed a duty of care to Plaintiffs and the Class because they were a foreseeable and probable victim of any inadequate data security practices.

93.     Dickey's solicited, gathered, and stored the Card Information provided by Plaintiffs and the Class.

94.     Dickey's knew or should have known it inadequately safeguarded this information.

95.     Dickey's knew that a breach of its systems would inflict millions of dollars of damages upon Plaintiffs and the Class, and Dickey's was therefore charged with a duty to adequately protect this critically sensitive information.

96.     Dickey's had a special relationship with Plaintiffs and the Class. Plaintiffs' and the Class's willingness to entrust Dickey's with their Card Information was predicated on the understanding that Dickey's would take adequate security precautions. Moreover, only Dickey's had the ability to protect its systems and the Card Information stored on them from attack.

97.     Dickey's own conduct also created a foreseeable risk of harm to Plaintiffs and the Class and their financial information. Dickey's misconduct included failing to: (1) secure its systems, despite knowing their vulnerabilities, (2) comply with industry standard security practices,

(3) implement adequate system and event monitoring, and (4) implement the systems, policies, and procedures necessary to prevent this type of data breach.

98.     Dickey's breached its duties to Plaintiffs and the Class by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard the financial information of Plaintiffs and the Class.

99.     Dickey's breached its duties to Plaintiffs and the Class by creating a foreseeable risk of harm through the misconduct previously described.

100.     Dickey's breached the duties it owed to Plaintiffs and the Class by failing to properly implement technical systems or security practices that could have prevented the loss of customer data.

101.     Dickey's breached the duties it owed to Plaintiffs and the Class by failing to timely and accurately disclose that Plaintiffs' and the Class members' Card Information had been improperly acquired or accessed.

102.     The law further imposes an affirmative duty on Dickey's to timely disclose the unauthorized access and theft of the financial information to Plaintiffs and the Class so that Plaintiffs and the Class can take appropriate measures to mitigate damages, protect against adverse consequences, and thwart future misuse of their financial information.

103.     Dickey's breached its duty to notify Plaintiffs and the Class by failing to provide Plaintiffs and the Class information regarding the breach until October 15, 2020. To date, Dickey's has not provided sufficient information to Plaintiffs and the Class regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Plaintiffs and the Class.

104.    As a direct and proximate result of Dickey's negligent conduct, Plaintiffs have suffered a drastically increased risk of identity theft, relative to both the time period before the breach, as well as to the risk born by the general public.

105.    As a direct and proximate result of Dickey's negligent conduct, Plaintiffs and the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

### COUNT II – Negligent Misrepresentation
**(By all Plaintiffs on behalf of the Class or, alternatively, the State Classes)**

106.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

107.    This count is brought on behalf of all Class members.

108.    Through its Privacy Policy and other actions and representations, Dickey's held itself out to Plaintiffs and the Class as possessing and maintaining adequate data security measures and systems that were sufficient to protect the Card Information belonging to Plaintiffs and the Class.

109.    Dickey's owed a duty to Plaintiffs and the Class to communicate accurate information about its compliance with its Privacy Policy and about any material weaknesses in its data security systems and procedures.

110.    Dickey's knew or should have known that it was not in compliance with its Privacy Policy.

111.    Dickey's knowingly and deliberately failed to disclose material weaknesses in its data security systems and procedures that good faith and common decency required it to disclose to Plaintiffs and the Class.

112.    Neither Plaintiffs nor the Class could have known or discovered the material weaknesses in Dickey's data security practices.

113.    A reasonable business would have disclosed information concerning material weaknesses in its data security measures and systems to Plaintiffs and the Class.

114.    Dickey's also failed to exercise reasonable care when it falsely conveyed information to Plaintiffs and the Class on October 15, 2020, relating to the Breach, which misrepresentation failed to sufficiently convey the facts underlying the Breach; failed to instill the urgency of the need to protect their Card Information immediately; provided the thieves of the stolen information with additional time and cover to further purloin and re-sell the stolen Card Information; provided the thieves and the purchasers of the stolen information with an opportunity to directly defraud Plaintiffs and the Class; and failed to adequately apprise Plaintiffs and the Class of the fact that their Card Information was compromised and in imminent jeopardy of falling further into the hands of cyber criminals.

115.    Dickey's also failed to exercise reasonable care when it failed to timely communicate information concerning the data breach that it knew, or should have known, compromised customer Card Information.

116.    Plaintiffs and the Class relied on Dickey's representations, or lack thereof, when they provided their Card Information to Dickey's.

117.    Despite its knowledge of the data breach and the imminent danger the Card Information theft posed, Dickey's failed to timely and forthrightly advise Plaintiffs and the Class of the Breach.

118.    In conjunction, and simultaneous with its misrepresentations relating to its awareness of the Breach, Dickey's intentionally failed to communicate to Plaintiffs and the Class material facts relating to the Breach, the theft of their Card Information, the urgency with which Plaintiffs and the Class needed to protect their Credit Information, the concurrent and urgent need for Plaintiffs and the Class to protect and safeguard their data, and other measures needed in light of the Breach.

119.     Plaintiffs and the Class justifiably relied on Dickey's misrepresentations and Dickey's intentional withholding of material facts, suffered injuries as a result, and were damaged as discussed herein and as will be proven at trial.

120.     As a direct and proximate result of Dickey's negligent misrepresentations and omission, Plaintiffs and the Class have suffered injury, have been damaged as described herein, and are entitled to damages in an amount to be proven at trial.

<u>**COUNT III – Negligence Per Se – FTC Act**</u>
**(By all Plaintiffs on behalf of the Class or, alternatively, the State Classes)**

121.     Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

122.     This count is brought on behalf of all Class members.

123.     Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as Dickey's of failing to use reasonable measures to protect Card Information. Various FTC publications and orders also form the basis of Dickey's duty.

124.     Dickey's violated Section 5 of the FTC Act by failing to use reasonable measures to protect Card Information; by failing to comply with applicable industry standards; by falsely representing to its customers and the public the nature and scope of the data breach and the need for password resets; and by unduly delaying reasonable notice of the actual breach. Dickey's conduct was particularly unreasonable given the nature and amount of Card Information it obtained and stored, the foreseeable consequences of a data breach, and the foreseeable consequences of misleading its customers and the public.

125.     Dickey's violation of Section 5 of the FTC Act constitutes negligence per se.

126.     Plaintiffs and the Class are within the category of persons the FTC Act was intended to protect.

127.    The harm that occurred as a result of the data breach described herein and in the various media reports detailing Dickey's deception relating to the data breach is the type of harm the FTC Act was intended to guard against.

128.    As a direct and proximate result of Dickey's negligence per se, Plaintiffs and the Class have suffered injury, have been damaged as described herein, continue to suffer injuries as detailed above, are subject to the continued risk of exposure of their Card Information in Dickey's possession, and are entitled to damages in an amount to be proven at trial.

<u>**COUNT IV – Fraud and Fraud Through Silence**</u>
**(By all Plaintiffs on behalf of the Class or, alternatively, the State Classes)**

129    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

130.    This count is brought on behalf of all Class members.

131.    Dickey's knew that data belonging to Plaintiffs and the Class had been stolen prior to its statement regarding the Breach made on October 15, 2020. This knowledge was of material importance relating to the safety, value, and security of the Card Information belonging to its customers.

132.    Plaintiffs and the Class did not know about the theft of their Card Information from Dickey's, nor could they have discovered such information by exercise of reasonable diligence.

133.    Dickey's was under an obligation to forthrightly and promptly communicate the pertinent facts relating to the data breach to Plaintiffs and the Class to permit them to undertake appropriate protective measures to mitigate the harm caused by Dickey's failure to adequately protect the data and to reasonably safeguard their identities, livelihood, and safety.

134.    Despite its knowledge of the data breach and the imminent danger the Card Information theft posed, Dickey's failed to timely and forthrightly advise its customers of the breach.

135.    In conjunction, and simultaneous with its misrepresentations relating to the Breach, Dickey's intentionally failed to communicate to Plaintiffs and the Class material facts relating to the data breach, the theft of their Card Information, the urgency with which Plaintiffs and the Class needed to protect their Credit Information, the concurrent and urgent need for Plaintiffs and the Class to protect and safeguard their data, and other measures needed in light of the data breach.

136.    Plaintiffs and the Class justifiably relied on Dickey's misrepresentations and Dickey's intentional withholding of material facts, suffered injuries as a result, and were damaged as discussed herein and as will be proven at trial.

137.    As a direct result of Dickey's fraud and fraud by silence, Plaintiffs and the Class have suffered injury, have been damaged as described herein, and are entitled to damages in an amount to be proven at trial.

**COUNT V – Violation of State Data Breach Statutes**
**(By all Plaintiffs on behalf of all members of the Class and Subclasses**
**residing in states with applicable data breach statutes)**

138.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

139.    This count is brought on behalf of all Class members.

140.    Dickey's is a business that owns, maintains, and licenses Card Information, and computerized data including Card Information, about Plaintiffs and Class members.

141.    Dickey's is in possession of Card Information belonging to Plaintiffs and the Class and is responsible for reasonably safeguarding that Card Information consistent with the requirements of the applicable laws pertaining hereto.

142.    Dickey's failed to safeguard, maintain, and dispose of, as required, the Card Information within its possession, custody, or control as discussed herein, which it was required to do by the laws of the State of Texas, Ohio, and all other applicable State laws.

143.    Dickey's, knowing and/or reasonably believing that Plaintiffs and Class members Card Information was acquired by unauthorized persons during the Breach, further failed to provide reasonable and timely notice of the Breach to Plaintiffs and the Class as required by following data breach statutes.

144.    Dickey's failure to provide timely and accurate notice of the data breach violated the following state data breach statutes:

a.      Alaska Stat. Ann. § 45.48.010(a), et seq.;

b.      Ark. Code Ann. § 4-110-105(a), et seq.;

c.      Cal. Civ. Code § 1798.83(a), et seq.;

d.      Colo. Rev. Stat. Ann § 6-1-716(2), et seq.;

e.      Conn. Gen. Stat. Ann. § 36a-701b(b), et seq.;

f.      Del. Code Ann. Tit. 6 § 12B-102(a), et seq.;

g.      D.C. Code § 28-3852(a), et seq.;

h.      Fla. Stat. Ann. § 501.171(4), et seq.;

i.      Ga. Code Ann. § 10-1-912(a), et seq.;

j.      Haw. Rev. Stat. § 487N-2(a), et seq.;

k.      Idaho Code Ann. § 28-51-105(1), et seq.;

l.      Ill. Comp. Stat. Ann. 530/10(a), et seq.;

m.      Iowa Code Ann. § 715C.2(1), et seq.;

n.      Kan. Stat. Ann. § 50-7a02(a), et seq.;

o.      Ky. Rev. Stat. Ann. § 365.732(2), et seq.;

p.      La. Rev. Stat. Ann. § 51:3074(A), et seq.;

q.      Md. Code Ann., Commercial Law § 14-3504(b), et seq.;

r.      Mass. Gen. Laws Ann. Ch. 93H § 3(a), et seq.;

s.      Mich. Comp. Laws Ann. § 445.72(1), et seq.;

t.      Minn. Stat. Ann. § 325E.61(1)(a), et seq.;

u.      Mont. Code Ann. § 30-14-1704(1), et seq.;

v.      Neb. Rev. Stat. Ann. § 87-803(1), et seq.;

w.      Nev. Rev. Stat. Ann. § 603A.220(1), et seq.;

x.      N.H. Rev. Stat. Ann. § 359-C:20(1)(a), et seq.;

y.      N.J. Stat. Ann. § 56:8-163(a), et seq.;

z.      N.C. Gen. Stat. Ann. § 75-65(a), et seq.;

aa.     N.D. Cent. Code Ann. § 51-30-02, et seq.;

bb.     Okla. Stat. Ann. Tit. 24 § 163(A), et seq.;

cc.     Or. Rev. Stat. Ann. § 646A.604(1), et seq.;

dd.     R.I. Gen. Laws Ann. § 11-49.3-4(a)(1), et seq.;

ee.     S.C. Code Ann. § 39-1-90(A), et seq.;

ff.     Tenn. Code Ann. § 47-18-2107(b), et seq.;

gg.     Tex. Bus. & Com. Code Ann. § 521.053(b), et seq.;

hh.     Utah Code Ann. § 13-44-202(1), et seq.;

ii.     Va. Code. Ann. § 18.2-186.6(B), et seq.;

jj.     Wash. Rev. Code Ann. § 19.255.010(1), et seq.;

kk.     Wis. Stat. Ann. § 134.98(2), et seq.; and

ll.     Wyo. Stat. Ann. § 40-12-502(a), et seq.

145.    As a result of Dickey's failure to reasonably safeguard the Card Information belonging to Plaintiffs and the Class, and Dickey's failure to provide reasonable and timely notice of the data breach to its customers, Plaintiffs and the Class have been damaged as described herein, continue to suffer injuries as detailed above, are subject to the continued risk of exposure of their Card Information in Dickey's possession, and are entitled to damages in an amount to be proven at trial.

## COUNT VI – Violation of State Consumer Protection Statutes
### (By all Plaintiffs on behalf of the Class or, alternatively, the State Classes)

146.  Plaintiffs reallege and incorporate by reference the allegations contained in the above paragraphs, as if fully set forth herein.

147.  This count is brought on behalf of all Class members.

148.  Plaintiffs and Class members are consumers who purchased products from, and/or transacted with, Dickey's primarily for personal, family or household purposes.

149.  Dickey's is a "person" as defined in the relevant state consumer statutes.

150.  Dickey's engaged in the conduct alleged in this Complaint in transactions intended to result, and which did result, in the sale of goods or services to consumers, including Plaintiffs and Class members. Dickey's is engaged in, and its acts and omissions affect, trade and commerce.

151.  Dickey's acts, practices and omissions were done in the course of Dickey's business of marketing, facilitating, offering for sale, and selling goods and services throughout the United States.

152.  Dickey's unlawful, unfair, deceptive, fraudulent and/or unconscionable acts and practices include:

    a.    Failing to implement and maintain reasonable security and privacy measures to protect Plaintiffs' and Class members' Card Information, which was a direct and proximate cause of the Data Breach;

    b.    Failing to identify foreseeable security and privacy risks, remediate identified security and privacy risks, and adequately improve security and privacy measures following previous cybersecurity incidents in the e-commerce industry, which was a direct and proximate cause of the Data Breach;

    c.    Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class members' Card Information, including but not limited to duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

4825-8944-3288.1

d.    Misrepresenting that it would protect the privacy and confidentiality of Plaintiffs' and Class members' Card Information, including by implementing and maintaining reasonable security measures

e.    Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and the Class members' Card Information, including but not limited to duties imposed by the FTC Act, 15 U.S.C. § 45;

f.    Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiffs' Class members' Card Information; and

g.    Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiffs' and Class members' Card Information, including but not limited to duties imposed by the FTC Act, 15 U.S.C. § 45.

153.    By engaging in such conduct and omissions of material facts, Dickey's has violated state consumer laws prohibiting representing that "goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," representing that "goods and services are of a particular standard, quality or grade, if they are of another", and/or "engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding"; and state consumer laws prohibiting unfair methods of competition and unfair, deceptive, unconscionable, fraudulent and/or unlawful acts or practices.

154.    Dickey's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Dickey's data security and ability to protect the confidentiality of customer Card Information.

155.    Dickey's intentionally, knowingly, and maliciously mislead Plaintiffs and Class members and induced them to rely on its misrepresentations and omissions.

156.    Had Dickey's disclosed to Plaintiffs and Class members that its data systems were not secure and, thus, vulnerable to attack, Dickey's would have been unable to continue in business and it would have been forced to adopt reasonable data security measures and comply with the law.

Instead, Dickey's received, maintained, and compiled Plaintiffs' and Class members' Card Information as part of the services Dickey's provided and for which customers paid without advising them that Dickey's data security practices were insufficient to maintain the safety and confidentiality of their Card Information. Accordingly, Plaintiffs and the Class members acted reasonably in relying on Dickey's misrepresentations and omissions, the truth of which they could not have discovered.

157.    Past breaches, both of its own systems and within the industry, put Dickey's on notice that its security and privacy protections were inadequate.

158.    Dickey's practices were also contrary to legislatively declared and public policies that seek to protect consumer data and ensure that entities who solicit or are entrusted with personal data utilize appropriate security measures, as reflected in laws like the FTC Act.

159.    The harm these practices caused to Plaintiffs and the Class members outweighed their utility, if any.

160.    The damages, ascertainable losses and injuries, including to their money or property, suffered by Plaintiffs and Class members as a direct result of Dickey's unfair methods of competition and unfair, deceptive, fraudulent, unconscionable and/or unlawful acts or practices as set forth in this Complaint include, without limitation:

a.    unauthorized charges on their debit and credit card accounts;

b.    theft of their personal and financial information;

c.    costs associated with the detection and prevention of identity theft and unauthorized use of their financial accounts;

d.    loss of use of and access to their account funds and costs associated with the inability to obtain money from their accounts or being limited in the amount of money they were permitted to obtain from their accounts, including missed payments on bills and loans, late charges and fees, and adverse effects on their credit including adverse effects on their credit scores and adverse credit notations;

e.    costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate and mitigate the actual and future consequences of the Dickey's data breach, including without limitation finding fraudulent charges, cancelling and reissuing cards, purchasing credit monitoring and identity theft protection, imposition of withdrawal and purchase limits on compromised accounts, and the stress, nuisance and annoyance of dealing with all issues resulting from the Dickey's data breach;

f.    the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their credit card and personal information being placed in the hands of criminals and being already misused via through the sale of consumers' information on the Internet card black market;

g.    damages to and diminution in value of their personal and financial information entrusted to Dickey's for the purpose of purchasing products from Dickey's and with the understanding that Dickey's would safeguard their data against theft and not allow access and misuse of their data by others;

h.    money paid for products purchased from Dickey's during the period of the Dickey's breach in that Plaintiffs and Class members would not have purchased from Dickey's had Dickey's disclosed that it lacked adequate systems and procedures to reasonably safeguard customers' financial and personal information and had Dickey's provided timely and accurate notice of the Dickey's data breach;

i.    overpayments made to Dickey's for transactions during the Dickey's data breach in that a portion of the price for such products paid by Plaintiffs and the Class members to Dickey's was for the costs of Dickey's providing reasonable and adequate safeguards and security measures to protect customers' financial and personal data, which Dickey's failed to do and, as a result, Plaintiffs and Class members did not receive what they paid for and were overcharged by Dickey's; and

j.    the continued risk to their personal information, which remains in the possession of Dickey's and which is subject to further breaches so long as Dickey's fails to undertake appropriate and adequate measures to protect data in its possession.

161.    Dickey's conduct described in this Complaint, including without limitation, Dickey's failure to maintain adequate computer systems and data security practices to safeguard customers' Card Information, Dickey's failure to disclose the material fact that it did not have adequate computer systems and safeguards to adequately protect users' Card Information, Dickey's failure to provide timely and accurate notice to its customers of the material fact of the Dickey's data breach, and Dickey's continued acceptance of Plaintiffs' and Class members' Card

Information, including credit and banking information for transactions on Dickey's after Dickey's knew or should have known of the data breach, constitute unfair methods of competition and unfair, deceptive, unconscionable, fraudulent and/or unlawful acts or practices in violation of the following state consumer statutes:

a.    The Alabama Deceptive Trade Practices Act, Ala. Code § 8-19-5(5), (7) and (27), *et seq.*;

b.    The Arizona Consumer Fraud Act, A.R.S. § 44-1522;

c.    The Arkansas Deceptive Trade Practices Act, Ark. Code Ann. §§ 4-88-107(a)(1)(10) and 4-88-108(1)(2), *et seq.*;

d.    The California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*, and the California Unfair Competition Law, Cal. Bus. and Prof. Code, § 17200, *et seq.*

e.    The Colorado Consumer Protection Act, Col. Rev. Stat. Ann. §§ 6-1-105(1)(b), (c), (e) and (g), *et seq.*;

f.    The Delaware Deceptive Trade Practices Act, Del. Code Ann. Title 6, § 2532(5) and (7), *et seq.*, and the Delaware Consumer Fraud Act, Del. Code Ann. Title 6 § 2513, *et seq.*;

g.    The Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.204(1), *et seq.*;

h.    The Georgia Fair Business Practices Act, Ga. Code Ann. §§ 10-1-393(a) and (b)(2), (5) and (7), et seq.;

i.    The Hawaii Deceptive Trade Practices Act, Haw. Rev. Stat. Ann. §§ 481A-3(a)(5), (7) and (12), et seq.; and the Hawaii Consumer Protection Act, Haw. Rev. Stat. Ann. § 480-2(a), et seq.;

j.    The Idaho Consumer Protection Act, Idaho Code §§ 48-603(5), (7), (17) and (18), et seq.; and Idaho Code § 48-603C, et seq.;

k.    The Illinois Consumer Fraud and Deceptive Trade Practices Act, 815 Ill. Stat. § 505/2, et seq., and the Illinois Uniform Deceptive Trades Practices Act, 815 Ill. Stat. § 510/2(a)(5), (7) and (12), et seq.;

l.    The Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-3(a) and (b)(1) and (2), et seq.;

m.    The Kansas Consumer Protection Act, Kan. Stat. §§ 50-626(a) and (b)(1)(A)(D) and (b)(3), et seq.;

n.    The Kentucky Consumer Protection Act, K.R.S. § 367.170(1) and (2), et seq.;

o.    The Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § 51:1405(A), et seq.;

p.    The Michigan Consumer Protection Act, M.C.P.L.A. § 445.903(1)(c)(e),(s) and (cc), et seq.;

q.    The Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.44, subd. 1(5), (7) and (13), et seq., the Minnesota Consumer Fraud Act, Minn. Stat. § 325F.69, subd. 1, and Minn. Stat. § 8.31, subd. 3(a);

r.    The Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-5(1), (2)(e) and (g), et seq.;

s.    The Missouri Merchandising Practices Act, Mo. Ann. Stat. § 407.020(1), et seq;

t.    The Montana Unfair Trade Practices and Consumer Protection Act, MCA §§ 30-14-103, et seq.;

u.    The Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1602, and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-302(a)(5) and (7), et seq.;

v.    The Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. Ann. § 598.0915(5) and (7), *et seq.*;

w.    The New Jersey Consumer Fraud Act, N.J. Stat. Ann. § 56:8-2, *et seq.*;

x.    The New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57-12-2(D)(5)(7) and (14) and 57-12-3, *et seq.*;

y.    New York Business Law, N.Y. Gen. Bus. Law § 349(a);

z.    The North Carolina Unfair Trade Practices Act N.C.G.S.A. § 75-1.1(a), *et seq.*;

aa.    The North Dakota Unlawful Sales or Advertising Practices Act, N.D. Cent. Code § 51-15-02, *et seq.*;

bb.    The Ohio Consumer Sales Practices Act, Ohio Rev. Code Ann. § 1345.02(A) and (B)(1) and (2), *et seq.*

cc.    The Oklahoma Consumer Protection Act, 15 Okl. Stat. Ann. § 753(5), (7) and (20), *et seq.*; and the Oklahoma Deceptive Trade Practices Act, 78 Okl. Stat. Ann. § 53(A)(5) and (7), *et seq*;

dd.    The Oregon Unfair Trade Practices Act, Or. Rev. Stat. § 646.608(1)(e)(g) and (u), *et seq.*;

ee.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. §§ 201-2(4)(v)(vii) and (xxi), and 201-3, *et seq.*;

ff.     The South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-20(a), *et seq.*;

gg.     The South Dakota Deceptive Trade Practices Act and Consumer Protection Act, S.D. Codified Laws § 37-24-6(1), *et seq.*;

hh.     The Tennessee Consumer Protection Act, Tenn. Code Ann. §§ 47-18-104(a) and (b)(5) and (7);

ii.     The Texas Deceptive Trade Practices- Consumer Protection Act, V.T.C.A., Bus. & C. § 17.46(a), (b)(5) and (7), *et seq.*;

jj.     The Utah Consumer Sales Practices Act, Utah Code Ann. §§ 13-11-4(1) and (2)(a) and (b);

kk.     The Vermont Consumer Fraud Act, 9 V.S.A. § 2453(a), *et seq.*;

ll.     The Virginia Consumer Protection Act, Va. Code Ann. § 59.1-200(A)(5)(6) and (14), *et seq.*;

mm.     The Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020, *et seq.*;

nn.     The West Virginia Consumer Credit and Protection Act, W.V.A. Code § 46A-6-104, *et seq.*;

oo.     The Wisconsin Deceptive Trade Practices Act, W.S.A. § 100.20(1), et seq.; and

pp.     The Wyoming Consumer Protection Act, Wyo. Stat. Ann. § 40-12-105(a), (i), (iii) and (xv), *et seq*.

162.    Plaintiffs and Class members seek all monetary and non-monetary relief allowed by law, including actual or nominal damages; declaratory and injunctive relief, including an injunction barring Dickey's from disclosing their Card Information without their consent; reasonable attorneys' fees and costs; and any other relief that is just and proper.

### COUNT VII – Intrusion Upon Seclusion
### (On behalf of Plaintiffs, the Class, and Subclasses
### who reside in Intrusion Upon Seclusion States)

163.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

164.    This count is brought on behalf of all Class members.

165.     Plaintiffs bring this claim on behalf of persons who reside in Alabama, Alaska, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Georgia, Hawaii, Idaho, Illinois, Iowa, Kansas, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nevada, New Hampshire, New Jersey, New Mexico, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, South Dakota, Texas, Utah, Vermont, Washington, and West Virginia; and any other state that recognizes a claim for intrusion upon seclusion under the facts and circumstances alleged above (the "Intrusion Upon Seclusion States").

166.     Plaintiffs and Class members had a reasonable expectation of privacy in the Card Information that Dickey's mishandled.

167.     By failing to keep Plaintiffs' and Class members' Card Information safe, and by misusing and/or disclosing said information to unauthorized parties for unauthorized use, Dickey's invaded Plaintiffs' and Class members' privacy by:

a.     Intruding into their private affairs in a manner that would be highly offensive to a reasonable person; and

b.     Publicizing private facts about Plaintiffs and Class members, which is highly offensive to a reasonable person.

168.     Dickey's knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiffs' position would consider Dickey's actions highly offensive.

169.     Dickey's invaded Plaintiffs' right to privacy and intruded into Plaintiffs' private affairs by misusing and/or disclosing their private information without their informed, voluntary, affirmative, and clear consent.

170.     As a proximate result of such misuse and disclosures, Plaintiffs' reasonable expectation of privacy in their Private Information was unduly frustrated and thwarted. Dickey's conduct amounted to a serious invasion of Plaintiffs' protected privacy interests.

171.    In failing to protect Plaintiffs' and Class member Private Information, and in misusing and/or disclosing their Private Information, Dickey's has acted with malice and oppression and in conscious disregard of Plaintiffs' and the Class members' rights to have such information kept confidential and private, in failing to provide adequate notice, and in placing its own economic, corporate, and legal interests above the privacy interests of its many millions of customers. Plaintiffs, therefore, seek an award of damages, including punitive damages, on behalf of Plaintiffs and the Class.

### COUNT VIII – Unjust Enrichment
**(By all Plaintiffs on behalf of the Class or, alternatively, the State Classes)**

172.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

173.    This count is brought on behalf of all Class members.

174.    Plaintiffs and the Class have an interest, both equitable and legal, in their Card Information that was collected and maintained by Dickey's. This Card Information was conferred on Dickey's directly by Plaintiffs and the Class members themselves.

175.    Dickey's was benefitted by the conferral upon it of Plaintiffs' and Class members' Card Information and by its ability to retain and use that information. Dickey's understood that it was in fact so benefitted.

176.    Dickey's also understood and appreciated that the Plaintiffs' and Class members' Card Information pertaining to Plaintiffs and the Class was private and confidential and its value depended upon Dickey's maintaining the privacy and confidentiality of that Card Information.

177.    But for Dickey's willingness and commitment to maintain its privacy and confidentiality, Plaintiffs and the Class members would not have transferred Card Information to Dickey's or entrusted their Card Information to Dickey's, and Dickey's would have been deprived of the competitive and economic advantages it enjoyed by falsely claiming that its data-security

safeguards met reasonable standards. These competitive and economic advantages include, without limitation, wrongfully gaining customers, gaining the reputational advantages conferred upon it by Plaintiffs and Class members, collecting excessive advertising and sales revenues as described herein, monetary savings resulting from failure to reasonably upgrade and maintain IT infrastructures, staffing, and expertise raising investment capital as described herein, and realizing excessive profits.

178.    As a result of Dickey's wrongful conduct as alleged in this Complaint (including, among other things, its deception of Plaintiffs, the Class, its users in general, and the public relating to the nature and scope of the data breach; its utter failure to employ adequate data security measures; its continued maintenance and use of the Card Information belonging to Plaintiffs and Class members without having adequate data security measures; and its other conduct facilitating the theft of that Card Information), Dickey's has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and the Class.

179.    Dickey's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein, including the compiling and use of Plaintiffs' and Class members' sensitive Card Information, while at the same time failing to maintain that information secure from intrusion.

180.    Under the common law doctrine of unjust enrichment, it is inequitable for Dickey's to be permitted to retain the benefits it received, and is still receiving, without justification, from Plaintiffs and the Class in an unfair and unconscionable manner. Dickey's retention of such benefits under circumstances making it inequitable to do so constitutes unjust enrichment.

181.    The benefit conferred upon, received, and enjoyed by Dickey's was not conferred officiously or gratuitously, and it would be inequitable and unjust for Dickey's to retain the benefit.

182.    Dickey's is therefore liable to Plaintiffs and the Class for restitution in the amount of the benefit conferred on Dickey's as a result of its wrongful conduct, including specifically the value to Dickey's of the Card Information that was stolen in the Dickey's data breach and the profits Dickey's is receiving from the use and sale of that information.

## COUNT IX – Bailment
### (By all Plaintiffs on behalf of the Class or, alternatively, the State Classes)

183.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

184.    This count is brought on behalf of all Class members.

185.    Plaintiffs and Class members delivered their personal and financial information to Dickey's for the exclusive purpose of transacting with Dickey's.

186.    In delivering their personal and financial information to Dickey's, Plaintiffs and Class members intended and understood that Dickey's would adequately safeguard their personal and financial information.

187.    Dickey's accepted Plaintiffs' and Class members' personal and financial information for the purpose of facilitating transactions with Plaintiffs and Class members.

188.    By accepting possession of Plaintiffs' and Class members' personal and financial information, Dickey's understood that Plaintiffs and Class members expected Dickey's to adequately safeguard their personal and financial information. Accordingly, a bailment (or deposit) was established for the mutual benefit of the parties.

189.    During the bailment (or deposit), Dickey's owed a duty to Plaintiffs and Class members to exercise reasonable care, diligence and prudence in protecting their personal and financial information.

190.    Dickey's breached its duty of care by failing to take appropriate measures to safeguard and protect Plaintiffs' and Class members' personal and financial information, resulting

4825-8944-3288.1

in the unlawful and unauthorized access to and misuse of Plaintiffs' and Class members' personal and financial information.

191.    Dickey's further breached its duty to safeguard Plaintiffs' and Class members' personal and financial information by failing to timely and accurately notify them that their information had been compromised as a result of the Dickey's data breach.

192.    Dickey's failed to return, purge or delete the personal and financial information of Plaintiffs and members of the Class at the conclusion of the bailment (or deposit) and within the time limits allowed by law.

193.    As a direct and proximate result of Dickey's breach of its duty, Plaintiffs and Class members suffered consequential damages that were reasonably foreseeable to Dickey's, including but not limited to the damages set forth herein.

194.    As a direct and proximate result of Dickey's breach of its duty, the personal and financial information of Plaintiffs and Class members entrusted to Dickey's during the bailment (or deposit) was damaged and its value diminished.

## COUNT X – Declaratory Judgment
### (By all Plaintiffs on behalf of the Class or, alternatively, the State Classes)

195.    Plaintiffs incorporate and reallege all allegations above as if fully set forth herein.

196.    This count is brought on behalf of all Class members.

197.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

198.    An actual controversy has arisen in the wake of the Dickey's data breach regarding its present and prospective common law and other duties to reasonably safeguard its customers'

-44-

Card Information and whether Dickey's is currently maintaining data security measures adequate to protect Plaintiffs and the Class members from further data breaches that compromise their Card Information. Plaintiffs allege that Dickey's data security measures remain inadequate.

199.     Plaintiffs and the Class members continue to suffer injury as a result of the compromise of their Card Information and remain at imminent risk that further compromises of their Card Information will occur in the future.

200.     Pursuant to its authority under the Declaratory Judgment Act, this Court should enter a judgment declaring that Dickey's continues to owe a legal duty to secure customer Card Information and to timely notify consumers of any data breach and that Dickey's is required to establish and implement data security measures that are adequate to secure customer Card Information.

201.     The Court also should issue corresponding prospective injunctive relief requiring Dickey's to employ adequate security protocols consistent with law and industry standards to protect consumers' Card Information.

202.     If an injunction is not issued, Plaintiffs and the Class members will suffer irreparable injury, and they also lack an adequate legal remedy. The threat of another Dickey's data breach is real, immediate, and substantial. If another breach at Dickey's occurs, Plaintiffs and the Class members will not have an adequate remedy at law, because many of the resulting injuries are not readily quantified and they will be forced to bring multiple lawsuits to rectify the same conduct.

203.     The hardship to Plaintiffs and the Class if an injunction does not issue exceeds the hardship to Dickey's if an injunction is issued. Among other things, if another massive data breach occurs at Dickey's, Plaintiffs and the Class members will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Dickey's of complying with an injunction by

employing reasonable prospective data security measures is relatively minimal, and Dickey's has a pre-existing legal obligation to employ such measures.

204.    Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing another data breach at Dickey's, thus eliminating the additional injuries to Plaintiffs and the millions of Class members whose confidential information would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, individually, and on behalf of all members of the Class, respectfully request that the Court enter judgment in their favor and against Dickey's, as follows:

1.    That the Court certify this action as a class action, proper and maintainable pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiffs are proper class representatives; and appoint Plaintiffs' Counsel as Class Counsel;

2.    That Plaintiffs be granted the declaratory relief sought herein;

3.    That the Court grant permanent injunctive relief to prohibit Dickey's from continuing to engage in the unlawful acts, omissions, and practices described herein;

4.    That the Court award Plaintiffs and the Class members compensatory, consequential, and general damages in an amount to be determined at trial;

5.    That the Court award Plaintiffs and the Class members statutory damages, trebled, and punitive or exemplary damages, to the extent permitted by law;

6.    That the Court award to Plaintiffs the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

7.    That the Court award pre- and post-judgment interest at the maximum legal rate; and

8.    That the Court award grant all such equitable relief as it deems proper and just, including, but not limited to, disgorgement and restitution.

9.    That the Court grant all other relief as it deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a jury trial on all claims so triable.

Dated: January 20, 2021                Respectfully submitted,

By:    */s/ William B. Chaney*
          WILLIAM B. CHANEY
          State Bar No. 04108500
          ANDREW K. YORK
          State Bar No. 24051554
          JIM MOSELEY
          State Bar No. 14569100

**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
wchaney@grayreed.com
dyork@grayreed.com
jmoseley@grayreed.com

DANIEL O. HERRERA*
NICKOLAS J. HAGMAN*
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
150 S. Wacker, Suite 3000
Chicago, Illinois 60606
Telephone: (312) 782-4880
Facsimile: (312) 782-4485
dherrera@caffertyclobes.com
nhagman@caffertyclobes.com

BRYAN L CLOBES*
**CAFFERTY CLOBES MERIWETHER**
**& SPRENGEL LLP**
205 N. Monroe St.
Media, Pennsylvania 19063
Telephone: (215) 864-2800
Facsimile:  (215) 964-2808
bclobes@caffertyclobes.com

**ATTORNEYS FOR PLAINTIFFS**

*These attorneys have submitted, or will be submitting, applications for pro hac admission.

4825-8944-3288.1